Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| CASITAS BLANCAS<br><br>Recurrida<br><br>v.<br><br>SUCESORES DE IRIS TORRES MONTALVO, ET AL<br><br>Peticionarios | TA2026CE00634 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala de Humacao<br><br>Caso núm.:<br>HSCI201401095 (208)<br><br>Sobre:<br>Cobro de Dinero, Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pérez Ocasio y la Jueza Trigo Ferraiuoli.

Sánchez Ramos, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 18 de junio de 2026.

El Tribunal de Primera Instancia ("TPI") denegó paralizar la continuación de un proceso de ejecución de una sentencia final y firme, el cual involucra la venta judicial de un inmueble hipotecado. Según se explica a continuación, por no haberse acreditado razón válida alguna que pudiese justificar la revocación del dictamen recurrido, en el ejercicio de nuestra discreción, declinamos la invitación a intervenir con lo actuado por el TPI.

I.

En octubre de 2014, Oriental Bank presentó la acción de referencia, sobre cobro de dinero y ejecución de hipoteca, contra la Sa. Iris F. Torres Montalvo (la "Causante"). En síntesis, alegó que la Causante incumplió con los pagos de un préstamo garantizado mediante una hipoteca sobre un bien inmueble residencial sito en la Urbanización Pereyó del Municipio de Humacao (la "Propiedad"). Se alegó que, en ese momento, la deuda ascendía a $83,965.12, más intereses, cargos por mora y $10,000.00 de honorarios de abogado.

Al cabo de varios incidentes procesales, el TPI autorizó el emplazamiento de la Causante mediante edicto. Subsecuentemente, le anotó la rebeldía y, el 17 de julio de **2015**, dictó *Sentencia Sumaria* a favor de la parte demandante (la "Sentencia").

El 14 de enero de 2016, se celebró una primera subasta en la que no se adjudicó la Propiedad.

Mientras tanto, el 19 de enero de 2016, la Causante presentó una *Moción por Derecho Propio*. En síntesis, solicitó la suspensión de la subasta y el nombramiento de un defensor judicial debido a que padecía de demencia senil o Alzheimer. El 16 de febrero de 2016, Oriental se opuso a la *Moción* de la Causante.

Mientras tanto, el 21 de enero de 2016, se celebró una segunda subasta y se le adjudicó la buena pro a Oriental.

Por su parte, el 24 de febrero de 2016, la Causante interpuso una *Moción Asumiendo Representación, Réplica a Moción en Cumplimiento de Orden, Solicitando se Levante Anotación de Rebeldía y Releve de Sentencia en Rebeldía, Solicitando Nombramiento de Defensor Judicial y Solicitud de Vista*. De entrada, alegó que el diligenciamiento del emplazamiento fue defectuoso, debido a que ella residía en la Propiedad y debió ser emplazada personalmente. Añadió que la Propiedad era su residencia principal, por lo que tenía derecho a los beneficios de la mediación compulsoria de la Ley Núm. 184-2012, *infra*.

Luego de varios trámites procesales, el 26 de junio de 2017, notificada el 28 de junio de 2017, el TPI dictó una *Resolución* en la que declaró *No Ha Lugar* las solicitudes de la Causante en cuanto a dejar sin efecto el emplazamiento por edicto, la anotación de rebeldía, la Sentencia Sumaria y la subasta.

Inconforme, la Causante presentó un recurso ante este Tribunal (KLAN201701251); el 22 de febrero de 2018, otro Panel de

este Tribunal dictó una *Sentencia* en la que se revocó parcialmente la *Resolución* recurrida. Se determinó que la Causante fue correctamente emplazada mediante edicto. Por otro lado, en cuanto a la incapacidad mental de la Causante, este Tribunal resolvió que el TPI tenía el deber de considerar el estado mental de la Causante antes de celebrar la segunda subasta. Por tanto, se dejó sin efecto la venta en pública subasta de la Propiedad y se ordenó al TPI "hacer una determinación sobre el estado mental" de la Causante y, de estimarlo procedente, "nombrar un defensor judicial".

Continuados los procedimientos ante el TPI, se celebró la vista sobre capacidad, luego de la cual se determinó que la Causante no tenía capacidad mental para entender los procedimientos en su contra; el TPI le nombró un defensor judicial.

El 16 de agosto de 2018, el TPI fue informado que la Causante había fallecido el 12 de agosto de 2018. Surge de los autos que los hijos de la Causante también fallecieron y que, en la actualidad, las siguientes personas aseveran ser parte de la sucesión de la Causante: Yamil Gabriel Rodríguez Dones (menor de edad), Pedro Juan Rodríguez Torres, Andrés Javier, Natalie Marie, Karla Marie, Gustavo Alberto, Karla Melissa y Héctor Manuel Rodríguez Villanueva (los "Peticionarios").

Al cabo de algunos trámites procesales, el 23 de marzo de 2023, los Peticionarios instaron una *Moción para Ejercer Retracto de Crédito Litigioso a Tenor con la Sección 2-306 de Ley de Transacciones Comerciales y el Nuevo Código Civil.* En síntesis, alegaron que el nuevo tenedor del pagaré, San Carlos Mortgage LLC, no era tenedor de buena fe y solicitaron el retracto del crédito litigioso. Subsecuentemente, reiteraron su solicitud de retracto, esta vez dirigida a un nuevo tenedor, Casitas Blancas LLC.

Mediante un dictamen notificado el 18 de julio de 2023, el TPI denegó la solicitud de retracto de la Sucesión. El TPI razonó que la

Sentencia era final, firme e inapelable, y que únicamente estaba pendiente la celebración de una nueva subasta y posterior venta judicial.

Inconformes, el 23 de octubre de 2023, los Peticionarios instaron un recurso ante este Tribunal (KLCE202301166); mediante una *Resolución* dictada el 19 de diciembre de 2023, un Panel hermano de este foro denegó la expedición del auto de *certiorari* solicitado por los Peticionarios.

Continuados los trámites ante el TPI, el 31 de marzo de 2025, el TPI notificó una *Orden y Mandamiento Sobre Ejecución de Sentencia y Venta de Bienes*.

Poco después, el 7 de mayo de 2025, el entonces acreedor (Casitas Blancas LLC) y los Peticionarios presentaron una *Moción Conjunta en Solicitud de Término*. Las partes informaron que se reunieron con el fin de auscultar la posibilidad de llegar a un acuerdo en el caso. En vista de ello, solicitaron un término para informar al TPI sobre el resultado de los esfuerzos.

El 14 de julio de 2025, los Peticionarios presentaron una *Moción Informativa y Solicitud de Vista*. Afirmaron que, durante las conversaciones entre las partes, surgieron asuntos que requerían la intervención del TPI, ello en conexión con el relevo del caudal relicto de la Causante.

El 27 de agosto de 2025, Casitas Blancas LLC presentó una *Moción en Torno a Moción Informativa y Solicitud de Vista*. Esencialmente, puntualizó que no procedía acumular, como parte de la acción de referencia, controversias relacionadas con el caudal de la Causante. Por consiguiente, planteó que estos asuntos debían adjudicarse en un pleito nuevo e independiente.

El 8 de octubre de 2025, los Peticionarios presentaron una *Moción* en la que informaron que habían "controversias auxiliares" relacionadas con la composición de la sucesión de la Causante.

Mediante una Orden notificada el 2 de diciembre, el TPI determinó que no atendería las controversias relacionadas con el caudal de la Causante.

El 21 de enero de 2026, los Peticionarios presentaron una *Moción para Notificar Presentación De Demanda De Sentencia Declaratoria.* En síntesis, informaron que presentaron una acción de sentencia declaratoria (la "Acción Hereditaria") con el propósito de obtener la resolución judicial de los asuntos sucesorales pendientes.

El 26 de marzo, Casitas Blancas LLC incoó una *Moción Solicitando Sustitución de Parte Demandante.* Informó que el pagaré y crédito hipotecario objeto de la acción de referencia había sido adquirido por TDV II, LLC (el "Acreedor"), lo cual la hacía tenedora de buena fe y, por ende, nueva parte demandante. Por consiguiente, solicitó que se le sustituyera por el Acreedor.

Por su parte, el 6 de abril de 2026, los Peticionarios instaron una *Urgente Moción Solicitando Anulación de Aviso de Subasta* (la "Moción"). Arguyeron que permitir la continuación del proceso de venta judicial sería contrario a lo dispuesto por el TPI en cuanto a la presentación de la Acción Hereditaria y a los esfuerzos para lograr la "venta corta" de la Propiedad. Solicitaron que se ordenara al Acreedor abstenerse de continuar con la ejecución de la Sentencia hasta que culminara la Acción Hereditaria.

El 7 de abril, el TPI autorizó la solicitud de sustitución de la parte demandante y ordenó al Acreedor que consignara su postura sobre la Moción.

El 15 de abril, el Acreedor se opuso a la Moción; planteó que, a dicha fecha, no existía un proceso activo de mitigación de pérdidas que impidiera la continuación de los procedimientos. Añadió que tampoco obraba oferta de venta corta para la Propiedad y que no se había satisfecho la Sentencia. Explicó que el no haber objetado que

se presentara la Acción Hereditaria no implicaba que se hubiese accedido a posponer la ejecución de la Sentencia hasta que finalizara la referida acción.

Mediante una Orden notificada el 22 de abril (la "Orden"), el TPI denegó la Moción.

El 23 de abril, se celebró la primera subasta, como resultado de lo cual Expert Energy Solutions LLC adquirió la Propiedad por la suma de $185,000.00, según se desprende de la correspondiente Acta de Subasta.

El 30 de abril, el Acreedor instó una *Moción Solicitando Confirmación de Venta Judicial y Moción Solicitando Retiro de Fondos*.

El 13 de mayo, el TPI notificó una *Orden de Confirmación de Adjudicación o Venta Judicial.* En igual fecha, el TPI autorizó el retiro de fondos a favor del Acreedor.

Inconforme con la Orden, el 18 de mayo, los Peticionarios presentaron el recurso que nos ocupa; formulan los siguientes señalamientos de error:

> PRIMER ERROR: Erró el TPI al autorizar la venta judicial de la propiedad en disputa mientras se encontraba pendiente la mitigación de pérdidas, en contra del derecho vigente que exige que se agote el proceso de mitigación antes de autorizarse la venta judicial de la propiedad.

> SEGUNDO ERROR: Erró el TPI y abusó de su discreción al autorizar la venta judicial de la propiedad mientras se realizaba un proceso de sentencia declaratoria requerido por Casitas Blancas LLC para culminar la mitigación de pérdidas actuando en contra de su orden previa autorizando la demanda de sentencia declaratoria para completar la mitigación de pérdida mediante venta corta.

El 28 de mayo, el Acreedor presentó un *Alegato en Oposición a Petición de Certiorari.* Disponemos.

## II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar

las determinaciones de un tribunal inferior. *IG Builders et al. v. BBVAPR,* 185 DPR 307 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón v. Srio. de Justicia,* 154 DPR 79, 91 (2001).

La Regla 40 del Reglamento del Tribunal de Apelaciones, establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

III.

Como cuestión de umbral, destacamos que el proceso de mitigación de pérdidas, tanto bajo la Ley 169-2016,[1] como bajo el Reglamento X[2] de la *Real Estate Settlement Procedures Act* (RESPA), aplica solamente cuando el inmueble es la **vivienda principal del deudor**. En efecto, la Sección 1024.30(c)(2) del Reglamento X expresamente indica que los procedimientos comprendidos desde la Sección 1024.39 hasta la Sección 1024.41 (sobre *loss mitigation*) solamente aplican a préstamos hipotecarios que **garanticen una propiedad que sea la residencia principal del deudor**.[3] La Exposición de Motivos de la Ley 169-2016, *ante*, establece que el proceso para evaluar una solicitud de mitigación de pérdidas estará reglamentado y regido por los términos del Reglamento X. Por ende, no aplica a inmuebles que no sean residencia principal de un deudor hipotecario.[4]

---

[1] Cónsono con lo establecido en la Real Estate Settlement Procedures Act, 12 U.S.C. 2601 et seq., (RESPA), la Asamblea Legislativa adoptó el programa de Mitigación de Pérdidas "Loss Mitigation", mediante la Ley Núm. 169 de 9 de agosto de 2016, denominada como Ley de Ayuda al Deudor Hipotecario, 32 LPRA sec. 2891 *et seq.*, (en adelante Ley 169-2016).

[2] Regulation X, 12 CFR Part 1024.

[3] §1024.30 Scope
[...]
(c) Scope of certain sections
(1) [...]
(2) The procedures set forth in §§1024.39 through 1024.41 of this subpart **only apply to a mortgage loan that is secured by a property that is a borrower's principal residence**. (Énfasis suplido).

[4] Evidencia de ello consta expresamente en las definiciones que provee el Artículo 2 del referido estatuto:
a. Acreedor Hipotecario — cualquier persona natural o jurídica, ya sea una entidad prestataria o financiera, un banco o una cooperativa, debidamente autorizada por las leyes de Puerto Rico o las leyes de los Estados Unidos de América para conceder, o que conceda, préstamos con garantía hipotecaria **sobre una residencia o vivienda principal**. También se considerará un acreedor hipotecario el **tenedor o portador de un pagaré que contenga un gravamen inmobiliario sobre una residencia o vivienda principal en Puerto Rico**. Igualmente, para propósitos de esta Ley, "acreedor hipotecario" incluirá aquellas entidades encargadas de administrar y dar servicios a los acreedores hipotecarios **relacionados con préstamo con garantía hipotecaria sobre una residencia o vivienda principal** (en inglés servicer).

b. Deudor Hipotecario — **Persona natural que ha incurrido en un préstamo de consumo o para propósitos personales garantizado con un gravamen hipotecario sobre su residencia o vivienda principal.** Esta definición incluirá a **todas las personas naturales** que sean contractualmente responsables de la obligación que se intenta hacer efectiva en el procedimiento de cobro o de ejecución de hipoteca.

Similarmente, la Ley 184-2012, conocida como la Ley para la Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipoteca de una Vivienda Principal, 32 LPRA sec. 2881 *et seq.*, se adoptó con el fin de proteger **la residencia principal** de un deudor hipotecario. *Scotiabank v. SLG Rosario-Castro*, 205 DPR 537, 547 (2020). El estatuto establece un procedimiento de mediación compulsoria, previo a que se concrete un proceso de ejecución de hipoteca sobre dicha propiedad principal, mediante el cual se le informará al deudor aquellos remedios alternativos disponibles para mantener el bien inmueble de que se trate. *Oriental Bank v. Caballero García*, 212 DPR 671, 680-681 (2023).

En este caso, la Causante, quien residió en la Propiedad, falleció en el 2018. A su vez, no surge del récord, ni se ha alegado, que alguno de los miembros de la sucesión de la Causante, o alguno de los Peticionarios, resida en ella. Por consiguiente, como cuestión de derecho, no es pertinente aquí la reglamentación y legislación arriba citada, relacionada con los procesos de mediación y mitigación de pérdidas. En cualquier caso, tampoco se acreditó al TPI que realmente exista actualmente un proceso activo y no completado de mitigación de pérdidas.

Como bien razonó el TPI, la Sentencia, dictada en el 2015, es final y firme, y no se ha planteado razón válida para detener su ejecución. No se ha esbozado teoría jurídica alguna que sustente la aparente postura de los Peticionarios a los efectos de que la pendencia de la Acción Hereditaria de algún modo justifica o conlleva que proceda la paralización de la ejecución de la Sentencia. Subrayamos que "una parte no tiene derecho a que su caso tenga

---

c. Residencia o Vivienda Principal — Aquella que se utiliza como el **hogar principal del deudor o del deudor y su familia inmediata**, y que para fines contributivos sobre bienes inmuebles es aquella para la cual aplicaría la exención contributiva principal. (Énfasis y subrayado provisto).
[…]
2 LPRA sec. 2892.

vida eterna en los tribunales, manteniendo así a la otra parte en constante estado de incertidumbre". *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 202-203 (2012); *Carattini v. Collazo Syst. Analysis, Inc.*, 158 DPR 345, 369 (2003).

En fin, al no haberse demostrado que el TPI haya cometido algún error de derecho, o abusado de su discreción, al denegar paralizar el proceso de ejecución de la Sentencia, en el ejercicio de nuestra discreción, hemos determinado no intervenir con la Orden.

IV.

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari* solicitado.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones